1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  BRYEN L VON PRIECE,

11           Plaintiff,

12       v.

13  CITY OF SEATTLE, et al.

14           Defendants.

CASE NO. C14-1024 MJP

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

15

16       THIS MATTER comes before the Court on Defendants' motion for summary judgment.

17  (Dkt. No. 22.)  Having reviewed the motion, Plaintiff Bryen Von Priece's response, (Dkt. No.

18  29), and all related papers, the Court hereby GRANTS Defendants' motion.

19

20                                      **Background**

       On December 3, 2012, Plaintiff Bryen Von Priece drove to Michelle Mitchell-Brannon's

21  residence with his husband John Foster.  (Dkt. No. 24–1 at 64.)  Mr. Von Priece owned Ms.

22  Mitchell-Brannon's home and was renting the property to Ms. Mitchell-Brannon and her family.

23  (Id. at 41–42.)  On that date, there was an anti-harassment order in place against Mr. Von Priece

24

1   which prevented him from surveilling Ms. Mitchell-Brannon and from entering her home or lot.

2   (Dkt. No. 24–2 at 28–29.)

3         Mr. Foster exited the vehicle and posted a notice on Ms. Mitchell-Brannon's door. (Dkt.

4   No. 24–1 at 70.) Mr. Von Priece videotaped Mr. Foster posting the notice. (Id. at 70–71.)

5   Around this time, Ms. Mitchell-Brannon arrived at her home in her car and pulled the front of

6   her car to the rear of Mr. Von Priece's car. (Id. at 71); see also (Dkt. No. 26 at 2.)

7         Ms. Mitchell-Brannon then called the Seattle Police Department and complained that Mr.

8   Von Priece was present at her residence in violation of the anti-harassment order. (Dkt. No. 26

9   at 2.) Around this time, Mr. Von Priece began to videotape his car and the surroundings. (Dkt.

10   No. 24–1 at 71–72.) At some point, Mr. Von Priece also filmed Ms. Mitchell-Brannon and her

11   car. (Dkt. No. 24–3.) Mr. Von Priece began to back up his car and Ms. Mitchell-Brannon

12   backed her car up as well. (Dkt. No. 24–1 at 75–76.) Mr. Von Priece then drove away from Ms.

13   Mitchell-Brannon's home and returned to his own home. (Id. at 76.)

14         On December 3, 2012, Defendant Samuel Byrd, a Seattle police officer, took a statement

15   from Ms. Mitchell-Brannon in connection with her complaint and also interviewed Mr. Von

16   Priece regarding the incident. (Dkt. No. 24–2 at 5–6.) Defendant Byrd completed a report based

17   on his investigation, including the two interviews. (Id.) That same day, Mr. Von Priece called

18   the Seattle Police Department ("SPD") East Precinct and spoke with Defendant Angela

19   Atkinson. (Dkt. No. 24–1 at 92.) During this conversation, Mr. Von Priece expressed his

20   dissatisfaction with the investigation and asked that different officers be sent to his residence to

21   investigate. (Id. at 92–94.) Defendant Atkinson refused Mr. Von Priece's request. (Dkt. No.

22   25 at 2–3.) Defendant Atkinson documented her conversation with Mr. Von Priece in a Follow-

23   Up Report. (Id.)

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 2

1    Defendant Scott Enright was assigned the follow-up investigation to Ms. Mitchell-

2  Brannon's complaint.  (Dkt. No. 24–2 at 18–20.)  Defendant Enright conducted his own

3  investigation of the incident, including interviewing Ms. Mitchell-Brannon, and referred the case

4  to the Criminal Division of the Seattle City Attorney's Office on December 7, 2012.  (Id.)

5    Mr. Von Priece delivered a disc containing the video he recorded on December 3, 2012 to

6  the SPD East Precinct on December 9, 2012.  (Dkt. No. 24–2 at 24.)  Officer Brad Welborn

7  received the disk.  (Id.)  Mr. Von Priece retained a copy of the video.  (Dkt. No. 24–1 at 98–99.)

8  Mr. Von Priece was not arrested or taken into custody as a result of the incidents of December 3,

9  2012.  (Id. at 27–28.)

10    The Seattle City Attorney's Office filed a criminal complaint against Mr. Von Priece on

11  April 19, 2013.  (Dkt. No. 24–4.)  The complaint alleged that, on or about December 3, 2012,

12  Mr. Von Priece violated a civil anti-harassment order protecting Michelle M. Mitchell that was

13  entered by the King County District Court on or about November 15, 2012.  (Id.)  Mr. Von

14  Priece's case proceeded to a jury trial.  (Dkt. No. 24–1 at 109.)  At some point during trial, Mr.

15  Von Priece provided his attorney with a copy of the video related to the December 3, 2012

16  incident that he had previously provided to SPD.  (Id. at 108–09.)  His attorney introduced the

17  video as evidence at trial.  (Id. at 112–13.)  Mr. Von Priece was acquitted of the criminal charges

18  against him.  (Id. at 111.)

19    Mr. Von Priece filed a tort claim with the City of Seattle.  (Dkt. No. 24–5.)  Mr. Von

20  Priece commenced this suit against Defendants the City of Seattle, Scott Enright, Angela

21  Atkinson, and Samuel Byrd (collectively, "Defendants") on July 8, 2014, asserting claims

22

23

24

1  stemming from his prosecution for violation of the anti-harassment protection order.[1]  (Dkt. No.

2  1.)  Specifically, Mr. Von Priece asserts claims arising under the Fourth and Fourteenth

3  Amendments to the United States Constitution, pursuant to 42 U.S.C. §1983, as well as

4  malicious prosecution and respondeat superior claims under Washington law.  (Dkt. No. 3.)

5        Defendants now move for summary judgment on all of Mr. Von Priece's claims, arguing

6  the Court should dismiss these claims with prejudice.  (Dkt. No. 22.)  Mr. Von Priece opposes

7  Defendants' motion arguing issues of material fact preclude summary judgment.  (Dkt. No. 29.)

8  **Discussion**

9  **I.**    **Legal Standard**

10      **A. Summary Judgment**

11        Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v.

12  City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The

13  underlying facts are viewed in the light most favorable to the party opposing the motion.

14  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary

15  judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

16  the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party

17  moving for summary judgment has the burden to show initially the absence of a genuine issue

18  concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  Once the

19  moving party has met its initial burden, however, the burden shifts to the nonmoving party to

20  establish the existence of an issue of fact regarding an element essential to that party's case, and

21  on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317,

22  

23  _____

24  [1] Mr. Von Priece also asserts claims against "Jane & John Does Seattle Police Officers 1–3" by his complaint.  (Dkt. No. 3.)

1    323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but

2    instead must have evidence showing that there is a genuine issue for trial.  Id. at 324.

3    **II.    Defendant Byrd and Defendant Atkinson**

4         In order to sustain a cause of action under Section 1983, a plaintiff must show (i) that he

5    suffered a violation of rights protected by the Constitution or created by federal statute, and (ii)

6    that the violation was proximately caused by a person acting under color of state law.  See

7    Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of Section

8    1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act,

9    participated in another's affirmative act, or omitted to perform an act which he was legally

10   required to do that caused the deprivation complained of.  Arnold v. IBM, 637 F.2d 1350, 1355

11   (9th Cir. 1981).  Further, it is well established that a defendant cannot be held liable under

12   Section 1983 solely on the basis of supervisory responsibility or position; rather, a supervisor

13   may be held liable under Section 1983 "if he or she was personally involved in the constitutional

14   deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct

15   and the constitutional violation."  Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2001).

16        A plaintiff asserting a claim for malicious prosecution under Section 1983 must prove all

17   of the elements for malicious prosecution under state law.  See Haupt v. Dillard, 17 F.3d 285,

18   289 (9th Cir. 1994).  In order to prevail on a malicious prosecution claim under Washington law,

19   a plaintiff must show, among other things, that the prosecution claimed to have been malicious

20   was instituted or continued by the defendant.  See  Bender v. City of Seattle, 99 Wash.2d 582,

21   593 (1983).

22        Mr. Von Priece asserts federal and state law malicious prosecution claims against all of

23   the Defendants.  Defendants argue Mr. Von Priece's federal and state law malicious prosecution

24

1    claims against Defendant Byrd and Defendant Atkinson should be dismissed with prejudice

2    because no reasonable jury could find that these individuals caused criminal proceeding to be

3    instituted against Mr. Von Priece.  (Dkt. No. 22 at 7–10.)  The Court agrees with Defendants.

4    Defendant Byrd was only responsible for the initial investigation of the December 3, 2012

5    incident.  (Dkt. No. 24-2 at 5–6.)  It was Defendant Enright, and not Defendant Byrd, who

6    referred the matter to the Seattle City Attorney's Office.  (Id. at 19–20.)  And although

7    Defendant Enright's report incorporates some narrative from Defendant Byrd's initial report,

8    Defendant Enright conducted his own investigation of the December 3, 2012 incident and found

9    there was probable cause to refer the matter to the Seattle City Attorney's Office.  (Id. at 20.)

10   Defendant Byrd's connection to the decision to charge Mr. Von Priece is too tenuous to support

11   a malicious prosecution claim under either state or federal law.

12         Likewise, Defendant Atkinson's connection to the decision to charge Mr. Von Priece is

13   too tenuous to support a malicious prosecution claim under either state or federal law.  Defendant

14   Atkinson's involvement was limited to a review of Defendant Byrd's initial report and a

15   conversation with Mr. Von Priece regarding his dissatisfaction with the initial investigation of

16   the December 3, 2012 incident.  (Dkt. No. 25 at 2–3.)  There is no evidence in this record that

17   Defendant Atkinson was consulted or was otherwise involved in the decision to charge Mr. Von

18   Priece.

19         Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Mr.

20   Von Priece's federal and state law malicious prosecution claims against Defendant Byrd and

21   Defendant Atkinson.  The Court discusses Mr. Von Priece's federal and state law malicious

22   prosecution claims against Defendant Enright and his Fourteenth Amendment Brady claim

23   against all Defendants infra, Sections III and IV.

24

1    **III.     Malicious Prosecution Claims**

2    Generally, a malicious prosecution claim is not cognizable under 42 U.S.C. §1983 if

3    process is available within the state judicial system to provide a remedy.  Usher v. City of Los

4    Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  However, "an exception to this rule exists for

5    malicious prosecutions conducted with the intent of denying a person equal protection or which

6    otherwise subject a person to a denial of constitutional rights." Cline v. Brusett, 661 F.2d 108,

7    112 (9th Cir. 1981).  Thus, in order to prevail on a §1983 malicious prosecution claim, a plaintiff

8    must normally demonstrate not only a deprivation of a constitutionally protected right, but also

9    all of the elements for malicious prosecution under state law.  See Haupt, 17 F.3d at 290.

10   To maintain an action for malicious prosecution under Washington law, the plaintiff must

11   allege and prove the following: (1) that the prosecution claimed to have been malicious was

12   instituted and continued by the defendant; (2) that there was want of probable cause for the

13   institution or continuation of the prosecution; (3) that the proceedings were instituted or

14   continued through malice; (4) that the proceedings terminated on the merits in favor of the

15   plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the

16   prosecution.  See Bender, 99 Wash.2d at 593.

17   Defendants move for summary judgment on Mr. Von Priece's federal and state law

18   malicious prosecution claims on the grounds that Mr. Von Priece cannot establish the lack of

19   probable cause and malice elements of his claims.  (Dkt. No. 22 at 12–15.)

20   The gist of an action for malicious prosecution rests on probable cause and malice.  See

21   Bender, 99 Wash.2d at 593.  Malice is satisfied by proving that the prosecution was undertaken

22   from improper or wrongful motives or in reckless disregard of the rights of the plaintiff.  Peasley

23   v. Puget Sound Tug & Barge Co., 13 Wash.2d 485, 501 (1942).  Impropriety of motive may be

24

1  established by proof that defendant instituted the criminal proceedings against the plaintiff: (1)

2  without believing him to be guilty, or (2) primarily because of hostility or ill will toward him, or

3  (3) for the purpose of obtaining a private advantage against him.  Id.

4        To show malice, the plaintiff must demonstrate affirmative acts disclosing at least some

5  feeling of "bitterness, animosity or vindictiveness towards the [plaintiff]."  Moor v. Smith, 89

6  Wash.2d 932 (1978).  The "reckless disregard" that can support an inference of malice requires

7  proof of bad faith, a higher standard than negligence.  State v. Chenoweth, 160 Wash.2d 454,

8  468 (2007).  In some cases, "where the evidence is sufficient to establish want of probable cause,

9  malice may be inferred from that fact when proven."  See Peasley, 13 Wash. 2d at 498.  But "this

10  is not a necessary deduction which must invariably be made."  Id.  Indeed, "want of probable

11  cause . . . in itself will not justify [a plaintiff's] recovery for damages for malicious prosecution."

12  Id. at 499.  The plaintiff must go further and "establish malice on the part of the defendant, for

13  want of probable cause without malice is of no avail."  Id.

14        Mr. Von Priece fails to show Defendant Enright referred the December 3, 2012 incident

15  to the Seattle City Attorney's Office without believing him to be guilty; nor does he show that

16  Defendant Enright acted out of hostility or ill will towards him.  Mr. Von Priece first argues

17  there is evidence of malice because exculpatory text was deleted from Defendant Enright's

18  "Follow-Up Report #2."  (Dkt. No. 29 at 9–10.)  This argument amounts to speculation at best

19  and is insufficient to defeat summary judgment.  See Witherow v. Paff, 52 F.3d 264, 266 (9th

20  Cir. 1995).  Mr. Von Priece also argues Defendant Enright acted with malice because he did not

21  interview Mr. Von Priece and did not send the video related to the December 3, 2012 incident to

22  the Seattle City Attorney's Office.  (Dkt. No. 29 at 10–11.)  These facts, when viewed in the

23  light most favorable to Mr. Von Priece, are insufficient to defeat summary judgment because no

24

1   reasonable jury could find, based on this evidence, that Defendant Enright acted in bad faith.  At

2   most, these facts show Defendant Enright may have been negligent in the way he conducted his

3   investigation.  But negligence is insufficient to support a finding of malice.  <u>Chenoweth</u>, 160

4   Wash.2d at 468.  Because there is no evidence that Defendant Enright acted with malice, the

5   Court GRANTS Defendants' motion for summary judgment as to Mr. Von Priece's federal and

6   state law malicious prosecution claims against Defendant Enright.

7   **IV.   Brady Violation**

8        Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), "[t]he government violates its

9   constitutional duty to disclose material exculpatory evidence where (1) the evidence in question

10   is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government

11   willfully or inadvertently suppresses this evidence, and (3) prejudice ensues from the suppression

12   (i.e., the evidence is "material")." <u>See</u> <u>Silva v. Brown</u>, 416 F.3d 980, 985 (9th Cir. 2005).

13   However, "no <u>Brady</u> violation occurs when a defendant possessed the information that he claims

14   was withheld." <u>Rhoades v. Henry</u>, 598 F.3d 495, 502 (9th Cir. 2010).  Nor does suppression

15   occur where the defendant is aware of the evidence and the means to obtain it. <u>See</u> <u>Raley v. Ylst</u>,

16   470 F.3d 792, 804 (9th Cir. 2006).

17        Defendants move for summary judgment on Mr. Von Priece's Fourteenth Amendment

18   <u>Brady</u> claim on the grounds that: (1) Mr. Von Priece's possession of the video undercuts his

19   <u>Brady</u> claim; and (2) the video was neither material nor exculpatory.  (Dkt. No. 22 at 16–17.)

20   Mr. Von Priece counters that the video was exculpatory and impeachment evidence and that

21   Defendants also suppressed "Follow Up Report #2" created by Officer Enright.  (Dkt. No. 29 at

22   14–16.)

23

24

1    Defendants could not have "suppressed" the video of the December 3, 2012 incident

2    within Brady's meaning because Mr. Von Priece was in possession of the video at all times.

3    (Dkt. No. 24-1 at 98–99); Rhoades, 598 F.3d at 502.  And because the Court already addressed

4    Mr. Von Priece's argument regarding "Follow-Up Report #2" supra, Section III, the Court does

5    not address it again here.  The Court GRANTS Defendants' motion for summary judgment as to

6    Mr. Von Priece's Fourteenth Amendment Brady claim against all Defendants.

7    **V.       Municipal Liability Section 1983**

8        In Monell v. Department of Social Servs., 436 U.S. 658, 691, the Supreme Court held

9    that municipalities are "persons" subject to damages liability under Section 1983 where "actions

10   pursuant to official municipal policy of some nature cause[s] a constitutional tort."  The Court

11   made clear that the municipality itself must have caused the constitutional deprivations and that a

12   city may not be held vicariously liable for the unconstitutional acts of its employees under a

13   theory of respondeat superior.  Id.  "Official municipal policy includes the decisions of a

14   government's lawmakers, the acts of its policymaking officials, and practices so persistent and

15   widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359

16   (2011).

17       The parties dispute whether Mr. Von Priece sufficiently pleaded a municipal liability

18   claim in his complaint.  (See Dkt. No. 22 at 21); (see also Dkt. No. 29 at 16–17.)  But even if Mr.

19   Von Priece's complaint did give sufficient notice of a municipal liability cause of action against,

20   summary judgment is appropriate as to this claim because the Court has not found a violation of

21   a constitutional right.  See Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010)

22   ("Because we hold that there was no underlying constitutional violation, the Simmonses cannot

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 10

1   maintain a claim for municipal liability.")  The Court GRANTS Defendants' motion for

2   summary judgment as to Mr. Von Priece's municipal liability claim.

3       **VI.     Respondeat Superior**

4           Under a respondeat superior theory of liability, "an employer is liable for torts committed

5   by an employee while the employee is performing duties within the scope of his or her

6   employment."  <u>Dubret v. Holland Am. Line Westours, Inc.</u>, 25 F. Supp. 2d 1151, 1152 (W.D.

7   Wash. 1998).  However, a finding of "employee non-liability precludes any finding that the

8   employer is liable, when liability is based solely on the doctrine of respondeat superior."

9   <u>Spurrell v. Bloch</u>, 40 Wash. App. 854, 869 (1985).  Because the Court has not found that the

10  individual Defendants are liable for any tort, the Court GRANTS Defendants' motion for

11  summary judgment as to Mr. Von Priece's respondeat superior claim.

12                          <u>**Conclusion**</u>

13          The Court GRANTS Defendants' motion for summary judgment, (Dkt. No. 22).

14          The clerk is ordered to provide copies of this order to all counsel.

15          Dated this 19th day of June, 2015.

16

17                              _____
                                Marsha J. Pechman
18                              United States District Judge

19

20

21

22

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 11